IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUDY FABIAN, FABIAN LEGAL SERVICES, LLC.,

    Plaintiffs/Counterclaim Defendants,

v.

RICHARD E. SHENKAN, SHENKAN INJURY LAWYERS, LLC.,

    Defendants/Counterclaim Plaintiffs.

19cv0582
ELECTRONICALLY FILED

---

RICHARD E. SHENKAN, SHENKAN INJURY LAWYERS, LLC.,

    Plaintiffs,

v.

RUDY FABIAN, FABIAN LEGAL SERVICES, LLC.,

    Defendants.

19cv1520
ELECTRONICALLY FILED

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Richard E. Shenkan, Shenkan Injury Lawyers, LLC. ("Shenkan"), requesting that this Court enter judgment in favor of Shenkan and against Rudy Fabian, Fabian Legal Services, LLC. ("Fabian"), in both the cases

identified above.  ECF 85.  Fabian filed a Response to the Motion (ECF 118) and Shenkan filed a Reply (ECF 124), making the matter ripe for disposition.

I.     STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s).  Fed. R. Civ. P. 56(c)(1).  The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question.  *Conoshenti v. Public Service*

*Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting Celotex, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

**II. FACTUAL BACKGROUND**

The following facts are material to both matters and are undisputed unless otherwise indicated.

Richard Shenkan and Rudy Fabian are both attorneys licensed to practice law in the Commonwealth of Pennsylvania. Shenkan was a member of "Shenkan Injury Lawyers, LLC" and Fabian was a member of "Fabian Legal Services, LLC" -- both limited liability companies organized under the laws of the Commonwealth of Pennsylvania.[1] Starting in and around 2015, both Fabian and Shenkan began discussing a formal working arrangement. Shenkan wanted

---

[1] Although Shenkan Injury Lawyers, LLC was formed in Pennsylvania, its sole member is Richard Shenkan who is a resident of, and is domiciled in, the state of Michigan, thus satisfying the complete diversity requirement in accordance with *GBForefront, LP v. Forefront Mgmt. Grp.*, 888 F.3d 29 34 (3d Cir. 2018).

3

Fabian to perform legal work for him and his company as an independent contractor. Prior to working with Shenkan, Fabian had worked for the Law Offices of Robert O. Lampl.

Shenkan and Fabian exchanged drafts of an agreement to define the specifics of their working relationship. One of the drafts indicated that Fabian would be paid $2,865 by Shenkan every two weeks. During the course of their working relationship, Fabian did receive $2,865 from Shenkan every two weeks. Additionally, one of the drafts indicated that Shenkan would provide Fabian with an office and office equipment and furnishings, and Shenkan did, in fact, provide these things to Fabian. However, one specific term the Parties could never agree upon was any sort of fee sharing arrangement. Fabian wanted a share of the legal fees generated on the cases he worked on, and Shenkan did not want to pay him a fee split on any case, but instead, Shenkan wanted to pay Fabian discretionary bonuses. Thus, no draft of any of the exchanged agreement was signed by the Parties.

Fabian worked for Shenkan for over three years. During that time, Shenkan paid Fabian $2,865 every two weeks, and in exchange, Fabian performing legal research and writing work for Shenkan for 42 hours, per week, on average. Fabian received bonuses from Shenkan as well. Shenkan reimbursed Fabian for any office and travel expenses he incurred related to the work he performed for Shenkan. Shenkan advanced all costs for all cases and Fabian did not incur any risk of loss on any cases he worked on for Shenkan. Shenkan provided Fabian with a computer, printer, office supplies, an office, and other office furnishings for Fabian to use.

In 2015, when Fabian first began working for Shenkan, he performed work on a consumer class action action styled, *Maszgay v. First Cmwlth. Bank* ("*Maszgay*"). The Complaint in the *Maszgay* case was filed in August of 2015, and Fabian continued to perform

work on that case every year that he worked for Shenkan. Fabian accepted discretionary bonuses from Shenkan as the case progressed from 2015 forward.

In 2018, Shenkan settled the *Maszgay* matter and filed a motion for final approval of the settlement agreement – which included a request to approve the legal fees. The legal fee portion of this motion indicated that Fabian had worked 827 hours on the *Maszgay* matter, and Shenkan indicated that Fabian's rate was $725 per hour. The Pennsylvania Court of Common Pleas granted final approval to the settlement agreement and awarded Shenkan aggregate legal fees in the amount of $2.92 million.

Shenkan did not inform Fabian that he had received this award. When Fabian asked Shenkan when he would receive "his share" of the *Maszgay* fee award, Shenkan told him he would not receive anything until the end of year when bonuses were paid. Ultimately, Shenkan paid Fabian a $15,000 bonus. Shenkan did not share with Fabian any portion of the $2.92 million in legal fees generated by the *Maszgay* case settlement.

Shenkan and Fabian ended their working relationship in early January of 2019.

**III.    ANALYSIS**

**A.    Fabian and Shenkan's Relationship - No Contract**

Turning to the facts present in both of these cases, one germane and undisputed fact is that the Parties failed to enter into a written contract to formalize all of the details of their working relationship, specifically Fabian's remuneration with regard to class action cases. The evidence of record illustrates that the Parties implicitly agreed to some terms of the draft agreements (such as Fabian's bi-weekly remuneration of $2,865), but could not agree on other terms, specifically, whether Fabian should receive a portion of the legal fees generated in class

5

action cases. Instead of reducing their agreement to a final writing[2], the Parties began to work with one another without a written contract.

Under Pennsylvania law, an enforceable contract a meeting of the minds requires the concurrence of both parties to the agreement, or they have failed to execute an enforceable contract. *City of Erie v. Fraternal Order of Police, Lodge 7*, 977 A.2d 3, 12 (Pa. Cmwlth. 2009). Further, there must be a meeting of the minds on all terms of the contract. *Id.* A meeting of the minds requires the concurrence of both parties to all the terms of the agreement; anything less will result in a failure to execute an enforceable contract. *Spinola v. Kelley,* No. 2120 C.D. 2015, 2016 WL 5172670 at *4 (Pa. Cmwlth. 2016).

The Parties to these lawsuits agree that they never signed an agreement despite exchanging three different drafts. The further agree that one term upon which they did not agree was a fee splitting arrangement between them.

During the course of their three-and-a-half year working relationship, two consumer class action cases resolved. The two cases were *Maszgay* and *Langer v. Capitol One Auto Finance*. The documentary evidence clearly shows that Shenkan was retained by the class representative in both cases to serve as the class counsel. Fabian is not mentioned in those records. Accordingly, Fabian is not "entitled" to receive any portion of the *Maszgay* and *Langer* attorneys' fees pursuant to <u>any</u> contingency fee agreement related to those matters.[3]

In addition, because there was no meeting of the minds as to whether Fabian would receive a portion of the legal fees generated by the cases on which he worked, no written or oral

---

[2] The Parties agree that there were several draft agreements exchanged which were never finalized and executed because they could not agree on certain terms.

[3] The same is true if Fabian is not mentioned in any other class action contingency fee agreement Shenkan has with a class of clients.

6

contract between Fabian and Shenkan exists which entitles Fabian to a portion of the fees from any class action. Thus, had Fabian asserted a claim for breach of contract, his claim would have failed.

Instead of advancing a breach of contract claim, Fabian's Amended Complaint in case number 19-582, first demands a declaration from this Court declaring "that Shenkan is judicially estopped from assuming any position in this case that is contrary to his representation" (set forth in his motion for final approval of the settlement agreement petition before the Court of Common Pleas of Jefferson County) "that a fee of $1.379 million for Fabian's work on *Maszgay* is fair and reasonable, and that a constructive trust is hereby imposed in favor of Fabian and against Shenkan in that amount, along with prejudgment interest." Fabian's Amended Complaint also advances an equitable claim for quantum merit or unjust enrichment.

### B. Fabian's Request for a Declaration Based upon Judicial Estoppel

"Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *Semper v. Gomez,* 747 F.3d 229, 247 (3d Cir. 2014), *citing In re Kane,* 628 F.3d 631, 638 (3d Cir.2010). Judicial estoppel is a judge-made doctrine that "seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Barley v. Fox Chase Cancer Ctr.,* 46 F.Supp. 3d 565, 574 (E.D. Pa. 2014), *citing Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir. 1996). In general, the doctrine is designed to prevent litigants from "playing fast and loose with the courts." *Id.* (internal quotation omitted). *Id.* The basic principle is that "[a]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." 18B Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure,* § 4477 (2d ed.2014). Several criteria

guide application of judicial estoppel doctrine, *i.e.*, whether two positions are irreconcilably inconsistent, whether the party changed position in bad faith, whether relief is tailored to address harm and no lesser sanction would suffice as remedy, and whether party is provided with opportunity to offer an explanation. *Semper*, 747 at 247.

Turning to this case, Fabian contends that Shenkan is judicially estopped from asserting that Fabian is entitled to anything less than the $1.379 million that Shenkan used to recover the $2.92 million as legal fees in the *Maszgay* matter. However, in making this argument, Fabian twists the purpose of this equitable doctrine.

As his employer, Shenkan chose to pay Fabian (and Fabian accepted) $2,865 every other week along with annual discretionary bonuses.[4] Fabian's argument is essentially that he should be paid what Shenkan charged his clients for Fabian's services. At no point did Shenkan agree to pay Fabian what he charged his clients for Fabian's services.

In fact, Fabian's argument fails across every industry and profession in the world. A simple example is a contractor who enters into an agreement with a homeowner for some exterior painting and construction. The contractor may pay its carpenters and painters $35 per hour, while billing the homeowner $70 per hour for those same services. Billing the homeowner a higher rate for those services does not entitle the carpenters and painters to $70 per hour, even if the contractor files a lawsuit against the homeowner and represents that the value of the work performed by each painter and carpenter was $70 per hour.

Because this Court finds that the "two positions" (meaning the amount charged by Shenkan for Fabian's services and the vastly lesser amount paid to Fabian for those same services), taken by Shenkan are <u>not</u> irreconcilably inconsistent, nor does this Court find that

---

[4] These bonuses varied in terms of the amount Shenkan paid Fabian from 2015 through 2018, but each year the amount increased.

Shenkan acted in bad faith by asserting the value of Fabian's services in his fee petition while paying Fabian a lesser sum, the Court finds no evidence to support a judicial estoppel declaration entitling Fabian to the amount charged by Shenakan for Fabian's services.

### C. Fabian's Request for Quantum Meruit or Unjust Enrichment

"*Quantum meruit* is an equitable remedy[, which] is defined as 'as much as deserved' and measures compensation under an implied contract to pay compensation as reasonable value of services rendered." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, PC,* 95 A.3d 893, 896 (Pa. Super. 2014) (citation omitted). "*Quantum meruit* is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." *Hershey Foods Corp. v. Chapek,* 828 F.2d 989, 998 (3d Cir. 1987) (internal quotations omitted). "An action brought on a theory of *quantum meruit* sounds in restitution [and, therefore,] the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Id.* at 999 (internal citations omitted).

Attorneys are allowed to enter into contingency fee agreements because they provide attorneys with the potential for a higher fee, which compensates the attorneys for assuming the risk of nonpayment for services in the event a case is lost. *Angino & Rovner v. Jeffrey Lessin & Assoc.,* 131 A.3d 502, 508 (2016); s*ee also* Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks,* 65 FORDHAM L. REV. 247, 271 (1996) ("The ethical justification for these approvals necessarily lies in the assumption that the lawyer's risk of receiving no fee, or a fee that effectively will be well below her normal hourly rate or opportunity cost, merits compensation in and of itself: Bearing the risk entitles the lawyer to a

commensurate risk premium."). Clients, however, are largely shielded from incurring a financial loss resulting from an unfavorable outcome.

In the instant matters, there is no dispute that Shenkan's law firm contracted with the clients for fees related to his firm's representation of their interests in the class action action lawsuit. There is also no dispute that Shenkan and his firm underwrote the costs of advancing the class action litigation in the Commonwealth Courts. If *Maszgay* or *Langer* or any other case that Shenkan's firm funded, failed to achieve a favorable verdict or settlement for the class, Shenkan would receive nothing for his time and effort and he would likely be out of pocket a sum of money for the costs of advancing the litigation. No one other than Shenkan bore that risk -- not his clients, not his employees, and not Fabian. Thus, there is ethical justification that Shenkan receive the totality of the legal fees as he was the attorney at risk of receiving no fee or a fee below the costs of advancing the class action litigation.

Moreover, it appears from the proffered payment records that Fabian was paid bi-weekly and received some additional payments each year (in increasing amounts) for each of the years he worked with Shenkan. Importantly, these additional sums were paid to Fabian in the years prior to the *Maszgay* and *Langer* settlements, and thus, these additional payments do not appear to be tied to the final resolution of any class action litigation upon which Fabian worked. Simply stated, all evidence shows that these payments were "bonuses" of whatever amount Shenkan chose at his own discretion to pay Fabian. Again, it does not appear from any of the proffered materials that Shenkan was "unjustly" enriched by Fabian's work for which Fabian was compensated.

Fabian has failed to provide this Court with any evidence that Shenkan either "wrongfully secured or passively received a benefit that would be unconscionable" for Shenkan

to retain without <u>further</u> compensating Fabian. *Hershey Foods,* 828 F.2d at 999. As explained above, without a contract requiring Fabian to be paid all or part of the legal fees generated by the class actions, and given that Shenkan took all of the risk in funding the class action cases on which Fabian worked, this Court cannot apply the equitable doctrine of *quantum meruit* in favor of Fabian.

That said, in case number 19cv1520, Shenkan requested several declarations from this Court based upon the premise that Fabian was not entitled to the equitable relief because Fabian's *quantum meruit* claim is expressly barred by the existence of an express, oral contract. As this Court has explained above, no valid contract existed between the Parties to these two lawsuits (19cv582 and 19cv 1520) as there never was a meeting of the minds on all of the terms of the contract. However, as this Court has also explained, Fabian is not entitled to the equitable relief sought through a *quantum meruit* claim because no evidence exists to support a claim that Shenkan either "wrongfully secured or passively received a benefit that would be unconscionable" for Shenkan to retain without compensating Fabian. The Court's Order will address Shenkan's request for declarations in this regard.

**IV. CONCLUSION**

The Court will grant Shenkan's Motion for Summary Judgment by way of an Order filed contemporaneously herewith.

BY THE COURT, this 6th day of March 2020.

 s/   Arthur J. Schwab
United States District Judge

cc: All ECF Registered Counsel of Record